[Callahan et al. v. The State.]


# Callahan *et al. v.* The State.

$$\frac{60 \quad 65}{99 \quad 188}$$

*Scire Facias against Bail, on Forfeited Recognizance.*

1. *Order for bail, on petition for habeas corpus.*—When an application for bail is made to a circuit judge in vacation, "he may fix the amount of bail required, and authorize the sheriff to take bail accordingly" (Code of 1876, § 4849); and on application for *habeas corpus,* by a person arrested under a *capias* after indictment found for murder, praying to be admitted to bail, presented to a circuit judge while holding court in another county of his circuit, accompanied with the written consent of the solicitor that he be admitted to bail in a specified sum, an order directing the sheriff to discharge him, on his giving bond with surety in the sum named, will be held valid under this statute, although granted without any return to the writ, or any hearing under it, and without the presence of the prisoner; and a recognizance taken by the sheriff, pursuant to its terms, will also be held valid.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. LOUIS WYETH.

This was a *scire facias* on a forfeited recognizance, or undertaking of bail, entered into by Jefferson Callahan as principal, and by the other obligors as his sureties, by which they agreed to pay the State of Alabama five thousand dollars, "unless the said Jefferson Callahan appears at the next term of the Circuit Court to be held for said county of Blount, and from term to term thereafter until discharged by law, to answer the State of Alabama of a charge of unlawfully and with malice aforethought killing William Graves, by shooting him with a gun or pistol." The recognizance was dated the 16th October, 1874, and was taken by the sheriff of said county, under an order made by Hon. W. J. HARALSON, the presiding judge of the fifth judicial circuit, which includes the county of Blount. His order is copied in the opinion of the court, and the facts on which it was based are also stated in the opinion. At the ensuing March term, 1875, said Callahan having failed to appear, a conditional judgment was rendered against him and the other obligors ; and a *scire facias* on this judgment was regularly issued and served. At the return term of the writ, the defendants appeared, and moved the court to set aside the judgment *nisi,* to dismiss the *scire facias,* and to quash the recognizance, or undertaking of bail. The grounds on which these motions were founded were—1st, that said recognizance was taken by the sheriff of said county, without any legal power or authority whatever ; 2d, that it was taken and

[Callahan et al. v. The State.]

approved by the sheriff under an order made by Judge Haralson on a petition for *habeas corpus,* "which said order was made in the absence of said Callahan, and without any power or authority of law;" 3d, that said order was made while Judge Haralson was presiding in the Circuit Court of Jackson, in the absence of said Callahan, and without any return to the writ of *habeas corpus;* 4th, that said undertaking of bail was taken and approved by the sheriff "without any authority under the constitution and laws of Alabama;" 5th, "that said supposed undertaking of bail was not taken or approved by any officer authorized by law to take or approve the same." On the hearing of these motions, the defendants read to the court the petition for *habeas corpus;* the order of Judge Haralson indorsed on it; the letter from the solicitor to Judge Haralson consenting that bail be allowed in the sum of $5,000, and the indictment under which the petitioner was arrested and confined. It was admitted that, "when the petition for *habeas corpus* was sued out, and when it was presented to Judge Haralson, then presiding in the Circuit Court of Jackson county, and acted on by him, and when the undertaking of bail was signed by said Callahan, he was under arrest, and in actual confinement in the jail of Blount county." On these facts, the court overruled the several motions; to which the defendants excepted. The defendants then craved oyer of the recognizance, the order under which it was taken, and the petition for *habeas corpus,* and pleaded, "in short by consent," 1st, "that said supposed undertaking of bail was not taken and approved by any officer having authority or power to take and approve the same;" 2d, that said order was made by Judge Haralson while presiding in the Circuit Court of Jackson county, without having issued any writ of *habeas corpus* as prayed, and without any return on such writ, or any examination into the matters prayed in the petition, and in the absence of said Callahan, and without any legal excuse being shown for his absence, and said order was never entered on the minutes of said Circuit Court of Jackson county; 3d, *nul tiel record;* 4th, that said Callahan, being arrested and imprisoned under an indictment for murder, presented his petition in writing for *habeas corpus* to Judge Haralson, "whereupon the said W. J. Haralson, judge as aforesaid, without having issued any writ of *habeas corpus,* or order requiring the sheriff to bring the body of said Callahan before him, upon the consent and agreement of the solicitor of said county, and in the absence of said Callahan, without giving him an opportunity to be heard on his said petition, either in person or by counsel, ordered 'the sheriff of said

county,' without specifying any particular county, to dis-
charge the said Callahan from custody, on his giving bond
and security in the said sum of $5,000, conditioned as the
law directs; and afterwards, under and by virtue of said
supposed order, made as aforesaid," the sheriff of Blount
county took the said undertaking of bail, without any legal
power or authority.  The court sustained a demurrer to each
of these pleas, and rendered judgment final against all of
the defendants, except several who successfully pleaded *non
est factum.*

The overruling of the several motions, and the judgment
on the demurrer to the pleas, are now assigned as error.

S. F. RICE, HAMILL & DICKINSON, and JOHN W. INZER, for
the appellants.—After indictment found for a felony, the
defendant may be admitted to bail in either one of two ways,
if the offense be bailable: either on application for bail, in
term time or vacation, under sections 4160 and 4241 of the
Revised Code, which must be construed together as *in pari
materia;* or by proceedings under petition for *habeas corpus,*
as provided for by sections 4260 *et seq.* in another chapter.
The modes of proceedings are entirely distinct, and the pris-
oner may elect which he will pursue; and no court or officer
can deprive him of this right of election, nor exercise it for
him.  In this case, the prisoner made his election, and filed
his petition for *habeas corpus,* which was under oath, and in
due form of law; and his petition was presented to an
officer authorized to grant the writ.—Rev. Code, §§ 4260–66.
It was the duty of that officer to issue the writ, and require
the petitioner to be brought before him; and on the return
of the writ, the prisoner also being brought before him, or a
statutory excuse shown for the failure to produce him, to
examine into the cause of his detention.  If, on such hear-
ing, "it appears that he is charged with a public offense
which is bailable, he must be admitted to bail, on offering
sufficient bail; and if sufficient bail is not offered, the amount
of bail required must be indorsed on the warrant, and the
court to which he is required to appear; and he may be
afterwards discharged by the sheriff of the county, on giving
sufficient bail in the amount so required."—Rev. Code, § 4282.
The record shows an entire disregard of, and radical
departure from, these wholesome statutory provisions.
There was no return to the writ, no hearing, no examination
into the causes of the prisoner's detention; the writ asked
for was not even issued, and the prisoner was not brought
before the judge.  In his absence, without a hearing, or an
opportunity to be heard, and without any examination of

witnesses, the judge acts on the *ex-parte* suggestion of the solicitor, and makes the order under which the supposed recognizance is afterwards taken by the sheriff. Such a disregard of established forms, involving a denial of substantial rights, can not receive the sanction of this court.—*Windsor v. McVeigh*, 3 Otto, 282; *Gibson v. The State*, Boston Law Reporter, April, 1878, p. 445; *Ex parte Mahone*, 30 Ala. 49; *Ex parte Burnett*, 30 Ala. 461; *Galpin v. Page*, 18 Wallace, 370; Smith on Statutes, § 667; *Capron v. Van Noorden*, 2 Cranch, 126; 1 Wallace, 252; 2 Dowl. Pr. 616; 4 Porter, 345.

If the order of the judge is to be considered as made on the petition for *habeas corpus*, it is void. The statute requires it to be "indorsed on the warrant, with the court to which he is required to appear;" and the reason is, "that the efficacy of the original commitment is superseded by this writ while the proceedings under it are pending, and the safe-keeping of the prisoner is entirely under the direction and control of the court."—Hurd on *Habeas Corpus*, 324; *Barth v. Clise*, 12 Wallace, 400; *In re Kaine*, 14 Howard, 134; 5 Modern, 22; 1 Vent. 330-46. If it is to be considered as made on an application for bail, it is equally void; because it purports, on its face, to be an order of the Circuit Court of Jackson, a court which had no jurisdiction of the case, since the indictment was pending in Blount county, and the prisoner was there confined in jail; and because it was not entered on the minutes of the court.—*Hudson v. Hudson*, 20 Ala. 364. If the order is void, the undertaking of bail is equally void. Bonds, or undertakings, for the appearance of accused persons in criminal cases, are valid "only when taken in pursuance of law and the order of a competent court or officer."—*United States v. Horton's Sureties*, 2 Dillon, 94; *United States v. Goldstein's Sureties*, 1 Dillon, 413; *United States v. Rundlett*, 2 Curtis, C. C. 45.

In his petition, the prisoner asked for an order "admitting him to bail, in manner and form as the law in such cases directs, *and* that he may have such *other relief* as the law in such cases directs, and he may be entitled to in the premises." Can this court say, or judicially know, that he was not entitled to be discharged? And if he was only entitled to bail, can this court say, or judicially know, that $5,000 was not "excessive bail?" The constitution secures to him the "right to be heard by himself and counsel;" declares that he shall not be deprived of "life, liberty, or property, but by due process of law;" that he shall not be arrested or detained, "except in cases ascertained by law, and according to the forms which the same has prescribed," and that "excessive bail shall not in any case be required." Of these

[Callahan et al. v. The State.]

substantial rights, in violation of express constitutional pro-
visions, he has been deprived by the order of the court, on
which this proceeding is founded. No presumptions are to
be indulged against him or his sureties, because the under-
taking was given as required. He was in custody, and
deprived of his liberty, and could only regain his liberty by
complying with the illegal order; and the sureties may well
have signed the undertaking under legal advice that it was
worthless. No waiver or acquiescence on his part can be
implied, to justify or cure such radical departure from pre-
scribed forms and established modes of procedure, in
matters affecting his liberty, and involving great principles of
public policy.—*State v. Wilson,* 50 Indiana, 487; 19 Amer.
R. 719; *Prine v. Commonwealth,* 18 Penn. St. 103; *Andrews
v. The State,* 2 Sneed, 550; *Jackson v. Commonwealth,*
19 Grattan, 656; *Slocovitch v. The State,* 46 Ala. 227.

Suppose Judge Haralson, instead of making this order in
the first instance, had notified the prisoner of his intention to
make it without giving him a hearing; would not this court,
on his petition, have granted a *mandamus* or prohibition
against it?

JOHN W. A. SANFORD, Attorney-General, for the State.
The order of Judge Haralson was not made by the Circuit
Court of Jackson, although that court was then in session:
it was the act of the judge, and not of the court, and it was
not necessary that it should be entered on the minutes of
the court. It is evident that an examination was waived, and
the amount of bail fixed by agreement; and these things
were done in the interest of the prisoner, and for his favor
and accommodation. He might lawfully waive these privi-
leges; and having waived them, and obtained his discharge
by the waiver, neither he nor his sureties can now complain
of it.—1 Bishop's Crim. Law, 6th ed., §§ 995-6; 1 Bishop's
Crim. Pro. § 117.

STONE, J.—One of the most vital principles of *Magna
Charta* declares, that 'no man shall be taken or imprisoned,
but by the lawful judgment of his peers, or by the law of the
land.' In 1679, the *habeas corpus* act was enacted by the
British Parliament, to furnish a sure and speedy remedy for
every subject of the realm who was unlawfully deprived of
his liberty. The Constitution of the United States, Art. I,
sec. 9, subd. 2, ordains, that " the privilege of the writ of
*habeas corpus* shall not be suspended, unless when, in cases
of rebellion or invasion, the public safety may require it."
The Constitution of Alabama, Declaration of Rights, § 18,

declares, "that the privilege of the writ of *habeas corpus* shall not be suspended by the authorities of this State." These cherished rights, so earnestly and perseveringly preserved in our organic law, have been made efficient by every legislative help, which an inbred love of personal liberty could from time to time suggest; so that now it is morally impossible that any citizen can be long restrained of his liberty, except by due course of law. And *habeas corpus*, by reason of the dignity of its office, has long since come to be styled the "Writ of Liberty."

The object of the writ of *habeas corpus* is, that a citizen, who is imprisoned, or otherwise restrained of his liberty, may have a judicial investigation of the cause of his imprisment—that he be restored to liberty, if confined without authority of law; and, if legally held, that he be admitted to bail, if his offense be bailable. This is the full measure of personal rights, which this great writ guarantees to every citizen.

Jefferson Callahan had been indicted by the grand jury of Blount county, for murder. Under a *capias*, issued by the clerk for his arrest, the sheriff had arrested him, and he was confined in jail to answer to said charge of murder, so found by the grand jury. Imprisoned under such charge, so found, no court was authorized to set him at liberty, unless on bail bond, or, possibly, on some other ground, not claimed or presented in this record. To be allowed to give bail, and then go at large, was, in his then condition, the highest hope he could entertain. He presented his petition to the judge of that circuit, at chambers, praying for the writ of *habeas corpus*. The prayer of his petition was, "that on the final hearing of the same, your Honor will be pleased to make an order admitting him to bail in the manner and form as the law in such cases directs." He did not ask to be enlarged, except on bail, and did not aver he was illegally restrained of his liberty. The petition conformed to the statute, and entitled the petitioner to the writ.—Code of 1876, §§ 4936-7-8, 4940. If the writ had been granted, and the prisoner brought before the circuit judge, that officer would have heard the evidence, and, if it appeared the prisoner was charged with a public offense which was bailable, he would have admitted him to bail, on his offering sufficient bail; and if sufficient bail was not then offered by the prisoner, it would have been the duty of the circuit judge to indorse on the warrant the amount of bail required, and the court to which the prisoner was required to appear; and, in such case, the prisoner may be afterwards discharged by the sheriff of the county,

[Callahan et al. v. The State.]

on giving sufficient bail in the amount so required.—Code of 1876, § 4958 ; also, § 4957.

The petition of the prisoner for *habeas corpus*, mentioned above, was brought to the notice of the circuit judge, while he was holding the Fall term of the Circuit Court of Jackson county, in 1874. Accompanying the petition was the written consent of the solicitor of Blount county, addressed to the circuit judge, in which he said, " I am willing that bail may be fixed at $5,000. Considering his standing, and the magnitude of the crime charged against him, I think that amount very reasonable." The circuit judge indorsed on the petition for *habeas corpus* the following order :

"Circuit Court, Jackson county, Ala., Fall term, 1874. Comes the solicitor of Blount county, and by consent agrees that the petitioner, the said Thomas J. Callahan, be admitted to bail in the sum of five thousand dollars ($5,000), and waiving an investigation. The sheriff of said county will discharge the defendant from custody, upon his giving bond and security in the sum of five thousand dollars, conditioned as the law directs."

(Signed) "W. J. H———,
" Judge of the Circuit Court."

These papers—petition of the prisoner, with the judge's indorsement thereon, and the consent of the solicitor—were filed in the office of the clerk of the Circuit Court of Blount county ; and thereupon, the sheriff took and approved the bail-bond, which corresponds substantially with the statute, and with the order of the circuit judge.

We have several decisions, made under our former statutes —the one mentioned above included—on the authority of which it is contended, that the bail-bond in the present record was taken without authority of law, and, consequently, the judgment must be reversed.—See *Butler v. Foster,* 14 Ala. 323 ; *Governor v. Jackson,* 15 Ala. 703 ; *Hale v. The State,* 24 Ala. 80 ; *Arnold v. The State,* 25 Ala. 69 ; *Antonez v. The State,* 26 Ala. 81. See, also, *Nat Gray v. The State,* 43 Ala. 41. We think it doubtful whether the present judgment should be reversed, if it stood alone on sections 4957-8 of the Code of 1876 ; for it is questionable if the prisoner must not be regarded as having obtained the order for bail, and given his bond, under proceedings in *habeas corpus.* The order gave him all he asked, or was entitled to, even if there had been a trial on *habeas corpus* before the judge, and a decision favorable to his wishes.—See section 4958, Code of 1876. The concession and waiver of the solicitor were made in the interest of the prisoner, and relieved him of delay, if not of expense and trouble. But we need not decide this,

All our decisions cited above, except that of *Nat Gray's case*, were made before the enactment of the statute hereinafter copied, and under the principles found in the chapter on bail in criminal cases, in the Code of 1852, page 643. A later statute enacts, that "circuit and city judges may, during term time, by order entered on the minutes, fix the amount of bail required in all cases of bailable felonies pending in the court, and direct the sheriff to take bail accordingly in vacation ; and in like manner, when an application for bail is made to any judge or chancellor in vacation, such judge or chancellor may fix the amount of bail required, and authorize the sheriff to take bail accordingly."—Code of 1867, § 4241 ; Code of 1876, § 4849. The section above is independent of the provision for bail on *habeas corpus*—section 4958—and is found under the head of "Bail in criminal cases." The last clause of this section expressly authorizes an application to be admitted to bail, to be made to any judge or chancellor in vacation, and empowers such judge or chancellor to fix the amount of bail, and authorize the sheriff to take the bond. The petition for *habeas corpus* was virtually an application to be admitted to bail ; for, being imprisoned under an indictment for murder, bail was the highest benefit and privilege the law allowed him to have. This fully justified, and will uphold, as strictly legal, the order made by the circuit judge, and the bond taken by the sheriff thereunder.

The rulings in the several cases of *U. S. v. Goldstein*, 1 Dillon, 413 ; *U. S. v. Horton*, 2 Dill. 94, and *U. S. v. Rundlett*, 2 Curtis, 41, resting, as they do, on the illegality of the several bail-bonds, and proceedings under them, are not opposed to the views above.

Judgment of the Circuit Court affirmed.